Good morning, Your Honors. Deputy Attorney General Stephen Mercer for Appellant Respondent. I don't think that it comes to any surprise to this Court that the State of California is respectfully urging the Ninth Circuit to join its sister circuits in the Tenth and Second Circuit Courts of Appeal in holding that Crawford v. Washington does not retroactively apply to the collateral review of state judgments that became final prior to Crawford's issuance. This Court recently touched on Crawford in the case of Parley v. Runnels, and that's the case that I cited in my 28J letter, and it's a case in which Justice O'Scanlan also heard. There, the Court made some salient observations about Crawford, one of which was that we didn't quite hold no retroactivity, did we? No, Your Honor, you did not, because in that case, the hearsay evidence at issue was non-testimonial. It was the victim's diaries. Here, however, and given that, since Crawford wouldn't have applied anyway, the Court explicitly said, we decline to address the retroactivity issue. Here, however, we have a case where the State is not contesting that this hearsay evidence was testimonial in nature. Indeed, it was given to police officers investigating this crime, but in Parley, the Court did note that Crawford reconfigured Confrontation Clause jurisprudence, and noted how it tightened the way that testimonial evidence was handled and left non-testimonial up to the State, and then at that point said, we don't need to address retroactivity. Are you heading for a watershed here, if it made that much of a change? Are you arguing against yourself? No, Your Honor. You, in that opinion, touched on it perfectly, in that this did reconfigure Confrontation Clause jurisprudence. It did not recreate or it did not create a bedrock principle for all criminal trials. It changed the rules of the game. And essentially, what it means is that Ohio v. Roberts, the controlling What you're saying is that it was essentially procedural. Correct. All right. Not a bedrock change or a watershed change in the law. No, but not watershed. Thank you, Your Honor. That's exactly correct. And given that, and I think that there's ample support for that, not only in Crawford itself, and the relevant portions are discussed in the briefing, but also in the opinions of the Tenth and the Second Circuits, which really address this issue in some detail. So therefore, from your point of view, then, you don't even reach the Teague issue? I think that we do reach the Teague issue because it is a new procedural rule here that came into effect after the judgment became final. But under a Teague analysis, it doesn't fit in the exceptions. It's not a watershed principle. So we don't have to go on to the EPTA question as to whether that would be applicable to a state habeas petition, because it's not retroactive in any event to a collateral review. Absolutely. And I think that what we're asking this Court to do is simply to take its initial points on Crawford, discussed in parla, and take them to their logical conclusion, and not to create an analytical split within this circuit, and not to create a split between the Tenth and the Second Circuits and the scores of lower federal courts that have all reached the same conclusion. I think this Court would be hard-pressed to be able to explain that at the time this state court decision was final, a different result was dictated by clearly established Supreme Court precedent. And so we do have an ADEPA situation. In this case, in a lot of ways similar again to the parla decision, it's the state's position that Crawford deference was simply not afforded to the lengthy and detailed state analysis of indicia of reliability under then-applicable Supreme Court precedent, namely Robertson and his progeny. Well, the potential problem there, and we've discussed it, both parties have discussed it well in briefs, is that the Court of Appeals discussion of the issue came in the context of the California Evidence Code. And you need to strip out, for our purposes, assuming that Roberts applies, you need to strip out some of the grounds cited properly for the Evidence Code. Because the Court didn't repeat its analysis, it leaves us at least somewhat uncertain as to exactly what the reliability analysis was based upon. So I think you need to focus on what's left after you take out the pieces you can't consider. Is there still enough to justify under the Roberts rule, if that applies, accepting this evidence? And I think in this case, there clearly was. We've got pages of litany of factors, facts, that were found by the State court that said this is why we find this reliable. And you're right. At the tail end of that analysis, they said, also, it was corroborated by another eyewitness. And you've touched exactly on a tension that we have here. And they said it was corroborated by his own earlier statement. It's not entirely clear if that can qualify. In fact, my suspicion is it probably doesn't qualify under Roberts, because it's independent of the statements at issue. But I think what we really need to look at here is the standard is, what's the totality of circumstances for indicia of reliability? And you're absolutely right that this corroborative evidence has been sort of excised from what is appropriate to review. But that doesn't mean that you throw the baby out with the bathwater. A similar point was made by this court again in Parla when they cited that exact evidentiary problem, saying evidence code section 1370 allows courts and actually requires courts to consider corroborating evidence. But, and it's at footnote 4. I don't have the page cite there. But the Supreme Court has condemned this last analytical matter of doing corroborating evidence. And this court cited the relevant California Court of Appeal opinion that said, while corroboration by other evidence is not a legitimate component of trustworthiness, its presence in the code does not render the statute unconstitutional. And why? Well, because, as this court wrote, because the section still requires the essential indicia of trustworthiness and suggests other legitimate factors which may establish that. So I think we need to look at, what's the state court's decision here? And how did they reach that? And would they have said, absent that corroborating eyewitness testimony and the fact that all of his statements mattered, would they have said there was a confrontational clause error under Ohio v. Roberts in this case? Clearly, that's not what the Court of Appeal intended to do. That's not what they did. They had an extensive analysis of indicia of reliability. Nothing suggests it hinged entirely on corroboration. And even if they did consider corroboration, the best that gets the petitioner to is a Brecht v. Abramson harmless error analysis. Because the U.S. Supreme Court has said in Wright, it doesn't render the decision invalid. But what it may, in fact, do is show that any confrontational clause error, even assuming one was there, was harmless. This is exactly what we have under the facts of this case, when you've got an eyewitness corroborating testimony that basically gives credence and shows that it was, in fact, reliable evidence. So at best, it would be a harmless error. In this situation, the Court of Appeal ruled that Cruz was unavailable. And the reason for that is, and I gather there was no objection made with respect in the State Trial Court to the State Trial Court finding on that, so it may or may not be true. Parties agreed. Both parties agreed. They agreed that Cruz was unavailable. And the trial court said, given the parties' agreement, I don't see what else we need to do here if we're all in agreement that he's unavailable and not going to testify because his attorney has just represented he's not going to testify because of the Fifth Amendment. Yes. Then that issue is no longer in the case? Is that your point? That's correct. That's our position. And that specific claim was raised in the California Appeal and then dropped in the petition for review to the California Supreme Court and not repeated in the Federal petition. That's why we didn't just do it. Do you want to reserve the rest of your time, or do you need me to go? Please, Your Honor. Thank you. Let's hear from Mr. Young. May it please the Court, my name is Wayne Young. I represent the petitioner, Javier Zamora. There are really a total of five statements at issue in this case. The first statement, October the 6th, there was two statements within that. There was one right at the scene, and there was another statement in the ambulance on the way to the hospital. They were identical, and neither of those statements did the victim identify my client as the shooter. There was a statement two days later at the hospital in which he identified this nickname Chayo, and identified his photograph, but refused to circle the photograph, refused to sign the document. Was Chayo, that name came up in the first, it was the 6th, but it was not linked to your client at that point. Correct. It's the second one you're now talking about where Chayo gets tied into, according to the officer's testimony, to the photograph, but Mr. Cruz did not himself sign or indicate that. Correct. And there's a discrepancy in the names. In those first two statements at the scene, it was Chayo, C-H-A-L-L-O, and the officer went into some detail. How do you spell that name? The child is C-H-I-L-D, so there's that gap as well. Now there's the statement a month later, it was videotaped and played for the jury, in which he identified my client. There's a further statement later on in February when he meets with the defense investigator, and at least according to the investigator, denies that my client was there. So you have that discrepancy. And the reason that's... Was that later? I thought that was about the same time. It was February 7th, which is three months or so after. And to get right to the point, you take the Court of Appeals analysis of reliability, and it has to be unreasonable. The first mistake, the real fundamental mistake the Court of Appeals made was that they concluded that my client was identified in that first statement. And the flaws in the subsequent analysis stem from that mistake, because the court says that Cruz never wavered in his identifications. Well, in fact, he did. So that's just a mistake. The Court of Appeals said that two later statements were consistent with the statement of October 6th. Again, that is just a flat-out mistake. So two of the factors on which the Court of Appeals based, are based on a fundamental error, which is that my client was identified in that first statement. Now, is it an error or is it something premised upon a fact or an inference that's disputed? That is the correlation of Chayo and Child as being the same name. Well, I would say that saying that my client was identified at the scene, that is a mistake, a unreasonable finding of fact. The rest of the conclusions that identifications never wavered at the later statements were consistent, is an unreasonable application. Well, if you could accept the premise, and it's a hidden premise to be sure, but if it could be established that the references to Chayo and Child were actually the same name being recorded in different fashions as a Spanish or as an English name, then everything else they say seems to fall into place. Now, that link, I will concede, is not the strongest link I've ever heard of, but is there an inconsistency or a problem with the state court determination separate and apart? If you accept that premise, it seems to be the other pieces falling apart. Yes, there is, but just one further point on that, the Court of Appeals never made that analysis. The district court did, asked the state to brief it and tell us why Chayo is Child and they did, and the court made a finding that they hadn't proved it, but the Court of Appeals never got into that, so it's a very hidden assumption that they made. But assuming they did, the other findings they made are also unreasonable, all but one. They found that, and for the reason that they're not acceptable under the federal constitutional analysis, they found that the statements were corroborated by Rodriguez. Well, we now know that's not, corroboration's not acceptable under Idaho v. Wright. They found no motive to fabricate identifications. Well, that gets to leniency. If he's promised some kind of drugs found in the house, and he had prior convictions, and there's also the felon in possession, under Lilly, leniency's not an appropriate factor as well. And they say that the other factor the Court of Appeals identified was that Cruz was reluctant to talk, and under the Lee case, voluntariness of the statement is not appropriate. So what we have is three fundamental errors about was he identified or not, and then were those statements corroborated? Those are errors, and then we have other findings by the Court of Appeals that aren't appropriate under the separate federal constitutional analysis. The one that I have to concede was that the statement subjected Cruz to retaliation. So of the six or seven factors that are identified by the Court of Appeals, is why this statement is reliable, five or six of them are wrong, are legally incorrect. And I think, you know, unreasonable, it's subjectively unreasonable, it's a tougher and tougher standard to meet from this side. But when you have six of those seven factors wrong, I think you're there. And your argument is without even referring to the Crawford issue? Yes, sir. And I will address Crawford. But the strongest argument, frankly, in my opinion, is that the Court of Appeals was unreasonable in coming to that conclusion for the reasons I just identified. Now, you earlier raised with counsel the issue of unavailability. You know, having been there in court sometimes, when the court says, you know, why should we go through with the charade? I'm not sure it necessarily implies you agree that he's unavailable. But, you know, the court having indicated that he thinks he's unavailable, you don't bother with the charade. But I'm not going to rely on that. I just — As a lawyer, I understand what you're saying. The problem is you've got to make your record. You do. And at that time, no record was made of an objection to the procedure. Correct. But there's two ways we still get to the unavailable analysis. One is through ineffective assistance of counsel. If he didn't raise it, that's ineffective assistance on its face because it led to the admission of these statements. And then the other way we get to it is the way the district court did in this case. It found procedural default on the part of the state because it didn't raise it in its answer. And, you know, counsel just argued that it wasn't — But why? Okay. It didn't argue in the answer. But the issue is there. Why should we close our eyes to that because it wasn't raised in the answer? Well, procedural default is something that habeas petitioners encounter all the time. This is one of those rare instances, perhaps, that it falls and it hurts the other side. But it's a rule that is imposed in this court all the time. And the point that counsel made was that it wasn't raised in the petition, by a pro se petitioner, mind you. And that's why it wasn't answered. But, in fact, the petitioner did say that, and I'm quoting, the trial court admitted statements in violation of confrontation clause and ruled that Cruz, quote, was unavailable and could not be cross-examined about them statements. So he certainly didn't say unavailability. I'm raising it. But the words unavailability do appear in the petition. And it wasn't answered. And on that basis, the district court found procedural default. And that's why unavailability can be raised here. And then we get to the substantive issue of unavailability. And, clearly, I think everyone agrees that he was not unavailable. Notwithstanding what happened in the trial. Correct. And then the last issue, Your Honors, is Crawford. And, as counsel pointed out, the two appellate courts that have addressed it have held that it's not retroactive. And after Shiro V. Summerling saying that Ring isn't retroactive, you know, there's not going to be too many things that are retroactive. But we do have the language in the opinion itself of Crawford by Justice Scalia about bedrock principles, which coincides with the language of the watershed rule implicating, you know, bedrock issues. Now, it's interesting that the Supreme Court, knowing that retroactivity is an issue, doesn't specifically in their decision say what they intend. But you do have that language that gives you certainly something to look at using the language of bedrock. It gives you something to argue, at least. Fair enough, Your Honor. But looking at the two decisions, you know, Brown v. Uphoff, the Tenth Circuit one, they basically held that it's not retroactive because confrontation clause issues are subject to harmless error. And they said if it's harmless error, then it can't be retroactive. It can't be a bedrock. I'm not sure that that's very persuasive. It could be. That's not the dividing line. And I'm more troubled by the Second Circuit case, the recent one, that says Crawford is not retroactive because it doesn't necessarily improve the accuracy of the criminal process. And I looked at that, and that seemed to be an uphill struggle. But looking back to Crawford, what Justice Scalia wrote was it has to implicate the accuracy, not necessarily improve. That's the distinction, if any, I can make. The original decision said implicate, and then Justice Scalia goes on about it's the mechanism of cross-examination that is implicated here. And that's the fundamental guarantee that the founders left us. Now, it may or may not improve accuracy, but that is the mechanism by which we're going — the Constitution, the Bill of Rights requires that we proceed. So I think the Second Circuit, in its analysis, it said, you know, if you apply Crawford, reliability is not always going to be improved because sometimes reliable evidence is going to be excluded as a result of the Crawford decision. So the question then is, is it a requirement to get retroactivity that it improve it or just that it implicate it? But given those two decisions, that's all we have. Thank you, counsel. Thank you. Mr. Adams, do you have anything further? Thank you, Your Honor. Just briefly, a lot has been said about — in the district court that petitioners not identified at the scene. The district court reached that issue sua sponte, never been claimed by any party at trial on the Court of Appeal, the California Supreme Court, or the federal petition. But the district court on its own felt Chayo and Child were distinct enough that, well, the California Court of Appeal got it wrong. The fact of the matter is, that may be a reasonable interpretation of the evidence, but that interpretation of the evidence wasn't dictated by Supreme Court precedent to the state courts. The state courts were not compelled to come to the exact same conclusion. Understandably, petitioner's counsel now jumps all over that favorable finding, saying, my client was never identified at the scene. Well, that's not exactly the case. We have the defense counsel at trial using the monikers Child and Chayo interchangeably with reference to petitioner. Officer says, I heard Child the night of the incident, as soon as it happened. Well, how do you spell that? Well, is it C-H-A-L-L-O or whatever? He says, yes. There's no distinction here between these two monikers. There was never a fifth attacker identified that was Chayo or that was not petitioner. And even if different interpretations of the evidence are probable or possible, here there was ample evidence for the jury to decide and the California Court of Appeal to agree that petitioner was the Chayo or Child referred to at the night of the incident during that uncontested statement. The fact that a different court might reach a different conclusion or argue the matter differently is absolutely beside the point on a DEPA review of this factual finding, which is presumed correct, and no evidence was presented to the contrary. Also, in terms of these other indicia of reliability, counsel says, well, maybe evidence of promises would go towards promises of leniency would work in my favor, but unfortunately there is no evidence of that, and none was presented in the district court. And all that aside, counsel still did not address the issue that even assuming that there was this confrontational clause error, which we are not conceding, this is a case that is right for a harmless error analysis given that there is corroborating evidence, not only from the uncontested statement by Cruz, but also Rodriguez's corroborating eyewitness testimony. The uncontested statement by Cruz brings you back to the Chayo-Child problem because you can't get to, I don't know the way you get to a identification of defendant as the word used in that statement, Chayo, without your client's subsequent identification of him as Child. Well that's not entirely true because it was undisputed that he was known as Child with a D, and there's testimony which I cited in my opening brief where the officer was asked, when did you first hear the moniker Child with a D, and he said, on the night of the incident, as soon as it happened. So there was evidence that Cruz did, in fact, identify Petitioner, Child with a D, at the night of the incident, whether that's in and of itself would be arguable. I was viewing it as basically you've got, wasn't it, Rodriguez, the third party, his testimony is sitting there, and maybe you can get Cruz's, but that becomes basically it. Well, for a harmless error analysis, is that truly enough? Can you stand on essentially one witness's testimony? I think given all the other indicia of reliability, permissible indicia of reliability, analyzed in depth by the state court here, combined with that, yes, I think absolutely. Well, the indicia of reliability goes to the admission of the statements, but if we move on and say, well, there was error, so you don't get in the statements, and I've now messed up the dates entirely, you're left with, well, the corroborating statements are the other eyewitness and what you can get out of his statements the day of the episode. Is there anything else? And that may be enough. I'm not trying to say it isn't, but I'm trying to figure out, okay, what do we really have? If we're doing a harmless error or a Brecht-type analysis because the premise at that point is that you removed the challenged evidence, what's left? Well, I still think that you have a crime scene statement that was undisputed at trial that petitioner was identified. The jury, no argument was made to the jury that child wasn't child or that there was any distinction between those terms. This was never an issue until the district court took it upon itself to interpret the evidence on its own. So you have that statement with that officer saying, I heard child when the night of the incident you have a victim identifying his attacker, one of his attackers. That on its own, which was the admissibility thereof was not contested, I think is more than enough. And again, let me make it clear, I am not disputing that there are multiple reasonable interpretations of this evidence, and that would make a great closing argument for a guess what? My client was never identified at the scene because he's not Chalo or Chayo or whatever other variation or iteration of this moniker there was, or that he also had a gang name of Popeye, which came up. A lot of these guys had multiple monikers. Great argument for the jury, but that issue has been decided by the state court. From a harmless error perspective, and I understand the difference to state court, we can't say what would have been argued to the jury had the confrontation clause evidence been removed. I think it's highly likely a defense counsel would have, he might not have made the argument there because you've got a pretty good connection between defendant and his photograph and the name with the additional statements that come in. Those statements aren't there, I think, I'm a defense counsel, I think a lot harder about Well, but let's be clear that the only contested statements that could have given rise to a confrontation clause error were Cruz's two subsequent statements, not the third party eyewitness statement that also identified Petitioner at the crime scene. So I think, I mean, that's powerful evidence. I have a guy that says, I know Petitioner personally, I've partied with him, he's in my gang, I saw him punch and kick and drag this guy into the apartment at the time. So that evidence stays, and that's critical for that harmless error analysis. Anything further? No, your honors. Thank you, counsel. Before announcing whether we're going to submit this case, I want to notice both sides that there is a pending case before another panel, it's called Bochting, B-O-C-K-T-I-N-G versus Bayer, B-A-Y-E-R, and it's Court of Appeals number 02-15866. This is a, what is probably the first Crawford retroactivity case that is pending in our court and it's quite likely, I'm not saying now, but I am saying that it's quite likely that we may have to defer submission of this case until we hear from the panel of judges Wallace, Noonan, and McEwen who have that case. Subject to that, the case just argued will be submitted for decision.
judges: Reinhardt, O'scannlain, Clifton